**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

THE UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                      No. CR 16-2930 JB

CEDRIC LANEHAM,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Opposed Motion for Review of Order of Detention Pending Trial, filed July 24, 2016 (Doc. 35)("Motion").  The Court held a hearing on August 15, 2016.  The primary issues are: (i) whether Plaintiff United States of America has proven by a preponderance of the evidence that Defendant Cedric Lee[1] poses a risk of flight; (ii) whether the United States has shown by clear-and-convincing evidence that Lee poses a risk of danger to the community; and (iii) whether, if one or more of those risks exist, the Court can impose conditions of release that reduce those risks to acceptable levels.  Although the Court could possibly fashion conditions of release to mitigate Lee's danger to the community, the Court cannot fashion conditions, or a combination of conditions, sufficient to mitigate the risk of flight.  The Court will therefore sustain the Honorable Karen B. Molzen, Chief United States Magistrate Judge's Detention Order Pending Trial, filed July 12, 2016 (Doc. 23)("Detention Order").

---

[1]In the Motion, the Defendant stated that his "true name is Cedric Lee, not Cedric Laneham."  Motion at 1 n.1.  The Court will therefore refer to him as Cedric Lee rather than Cedric Laneham.

## FACTUAL BACKGROUND

The Court sets forth the facts as the United States alleges them in its Indictment, filed June 30, 2016 (Doc. 1), bearing in mind that Lee is presumed innocent of all charges, see Estelle v. Williams, 425 U.S. 501, 503 (1976)("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." (citing Coffin v. United States, 156 U.S. 432, 453 (1895))).  The Court recites the United States' version of the facts because the high burden of proof placed on it necessitates that it have a cogent, internally consistent version of events,[2] and not out of any predisposition to believe the United States' side of the story.  See In re Winship, 397 U.S. 358, 365 (1970)("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

Lee allegedly conspired with two others -- Devell Devoual and Dwayne Cunningham -- to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine.  See Indictment at 1.  Then, Devoual and Lee allegedly distributed the mixture containing methamphetamine.  See Indictment at 1-2.

## PROCEDURAL BACKGROUND

A federal grand jury indicted Lee, along with his two co-Defendants, Devoual and Cunningham, on June 30.  See Indictment at 1.  The Indictment charges Lee with two charges.

---

[2]The defendant in a criminal case, on the other hand, need not present a cogent theory of the case or propose a comprehensive factual story.  He or she may sit back and attempt to poke holes in the United States' theory of the case, and need not put on any case at all.  See United States v. Wittig, No. 03-40142-JAR, 2005 WL 758606, at *4 (D. Kan. April 4, 2005) (Robinson, J.)("It is axiomatic that a defendant has a presumption of innocence, which means that a defendant need not present evidence, as the defendant has no burden of proof in a criminal case."  (footnote omitted)).

See Indictment at 1-3.  First, it charges him with one charge of conspiring to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 21 U.S.C. § 846.  Second, the Indictment charges Lee with "unlawfully, knowingly and intentionally distribut[ing] a controlled substance, 50 grams and more of a mixture and substance containing a detectible amount of methamphetamine" in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2. Indictment at 1-2.

On July 12, 2016, Chief Magistrate Judge Molzen entered a Detention Order denying Lee's request to be released to a third-party custodian pending trial.  See Detention Order at 1-2. After conducting a detention hearing pursuant to the Bail Reform Act, 18 U.S.C. § 3142(f), Chief Magistrate Judge Molzen concluded that Lee should be detained pending trial.  See Detention Order at 1.  Judge Molzen determined that the United States demonstrated by clear-and-convincing evidence that Lee posed a serious risk of danger to the community and presented a serious flight risk.  See Detention Order at 2 (finding that "the testimony and information submitted at the detention hearing establish by . . . clear and convincing evidence . . . [that] Defendant is a flight risk and danger to the community").  Chief Magistrate Judge Molzen therefore committed Lee to confinement in a corrections facility to await trial.  See Detention Order at 2.

Lee appealed the Detention Order on April 10, 2014.  See Motion at 1.  First, he contends that he does not present a risk of non-appearance.  See Motion at 2.  He explains that he "had been living in Albuquerque for almost ten years" and "is in a stable long-term relationship with his partner, Jessica Davis."  Motion at 2.  Lee has two daughters with Davis, ages six and ten. See Motion at 2.  Lee states that he "has been steadily engaged in his own business detailing

cars."  Motion at 2.  He notes that, although he has some family in Memphis, Tennessee, "he is a United States citizen and has no substantial ties to any foreign country."  Motion at 2.  Lee argues that these facts mitigate any risk of non-appearance.

Second, Lee asserts that he does not pose a danger to the community.  See Motion at 2. He contends that the evidence against him is "hardly overwhelming."  Motion at 2.  He further states that the offense's nature suggests that he poses little danger, as he is "at most, a street-level drug dealer" whose detention "will do little, if anything to stem the tide of drugs in the community."  Motion at 3.  Finally, Lee states, "the only violent offense for which Defendant has been convicted occurred over ten years ago."  Motion at 3.  He therefore asks the Court to release him "to the third party custody of the La Pasada Halfway House pending trial," located in Albuquerque, New Mexico.  Motion at 4.

The Court held a hearing on August 15, 2016.  See Transcript of Hearing (taken August 15, 2016)("Tr.").[3]  Lee argued first that "[t]here was no violence involved in the offense."  Tr. at 2:16-17 (Anderson).  He explained that "he is not a leader, organizer or a drug cartel, he is not a substantial player in any drug trafficking organization."  Tr. at 2:24-3:2 (Anderson).  He argued that the evidence against him is not strong.  See Tr. at 6:20-7:25 (Anderson).  He explained that he was arrested "a number of days after" allegedly selling drugs to an undercover Alcohol Tobacco and Firearms agent, who saw Lee only from the back seat of a car.  Tr. at 7:1-6 (Anderson).  He stated that, aside from his co-Defendant Cunningham, "there are no other witnesses here to the drug transaction."  Tr. at 7:4-8 (Anderson).  He argues that, accordingly, "it is hardly clear that it was, in fact, [Lee] in the front seat."  Tr. at 7:20-23 (Anderson).  The

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

United States opposed this characterization of the evidence, concluding that "the evidence in the case is fairly strong."  Tr. at 15:19-20 (Cairns).  It explained that "an undercover officer was there for the transaction and then . . . determined through surveillance as to who . . . Lee was and that he was linked to that transaction."  Tr. at 15:20-16:3 (Cairns).

The Court then asked Lee about his criminal history.  Lee explained that the 1999 assault resulted from a domestic dispute from Lee's prior relationship.  See Tr. at 10:9-14 (Anderson). He stated that the 2000 aggravated assault arrest "was a court mix-up, that it was a mistaken identity," and resulted in a dismissal.  Tr. at 10:20-22 (Anderson).  He then explained that the aggravated assault in 2005 "was a result of a shooting that that happened" in Memphis.  Tr. at 11:3-8 (Anderson).   Lee described his 2007 arrest for aggravated robbery was "a case of mistaken identity."  Tr. at 12:4-8 (Anderson).  He noted that the 2013 assault against a household member occurred in a prior relationship.  See Tr. at 12:13-14 (Anderson).  Regarding the aggravated assault and knowingly leaving the scene of an accident involving great bodily harm, Lee asserted that he was involved in a car accident, was alleged to have left the scene, and "possibly alleged to have been in possession of a firearm."  Tr. at 13:15-21 (Anderson).  He admitted to being a felon, but argued that these assaults occurred "quite a long time ago" and that he "has matured somewhat in those years."  Tr. at 11:10-12 (Anderson).

As to being a potential flight risk, Lee stressed that he came to Albuquerque to pursue a better life and has been here for about ten years.  See Tr. at 5:11-16 (Anderson).  Lee described his business washing and detailing cars, which he does at a local church.  See Tr. at 5:8-15 (Anderson).  He states that he earns "maybe a hundred dollars a week."  Tr. at 5:11-15 (Lee).  He explained that he spends his remaining time with his two children.  See Tr. at 5:18-23 (Anderson).

The Court asked the United States about Lee's risk of nonappearance.  See Tr. at 8:7-11 (Anderson).  The United States said that Lee had reported recently living in Chicago, Illinois, and in Memphis, so "there wasn't really a longstanding time of a current residence."  Tr. at 8:12-19 (Cairns).  It further explained that, when defendants have "an extensive criminal history like this, and there's a pattern of criminal behavior," there is likely an unstable living situation.  Tr. at 9:1-11 (Cairns).  The United States emphasized that its concern with pretrial release was that Lee "does seem to have a history of not showing up for court."  Tr. at 15:9-11 (Cairns).  The United States pointed out that Lee "had to be extradited to Tennessee."  Tr. at 15:11-13 (Cairns).

The United States raised a concern with allowing Lee to stay at La Pasada.  See Tr. at 16:14-25 (Cairns).  It explained that placing Lee in La Pasada could enable Lee to talk to his co-Defendant, Cunningham, who is currently at La Pasada.  See Tr. at 16:14-25 (Cairns); id. at 18:1-5 (Cairns).  The United States Probation Officer had "serious concerns" about placing Lee in a halfway house.  Tr. at 19:2-5.  These concerns stemmed from Lee's "criminal history, history of noncompliance, . . . . history of violence," and "a pending aggravated assault."  Tr. at 19:2-10.  The Court likewise expressed its concern about "the number of failures to appear," "particularly since he had to be extradited back to Tennessee, at least suggests what he left Tennessee knowing he had criminal charges pending there."  Tr. at 22:24-23:3 (Court).  The Court stated that it was worried "about him doing the same thing here, leaving, moving to another place, and then us having to send police officers out."  Tr. at 23:1-7 (Court).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a court may detain a defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community."  18

U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight

by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-

convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616

(10th Cir. 2003).  "The rules concerning the admissibility of evidence in criminal trials do not

apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C.

§ 3142(f).  To determine whether pretrial detention is warranted, the judicial officer must

consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g)    **Factors to be considered.** -- The judicial officer shall, in determining
> whether there are conditions of release that will reasonably assure the appearance
> of the person as required and the safety of any other person and the community,
> take into account the available information concerning --
>
> > (1)    the nature and circumstances of the offense charged, including
> > whether the offense is a crime of violence, a violation of section 1591, a
> > Federal crime of terrorism, or involves a minor victim or a controlled
> > substance, firearm, explosive, or destructive device;
> >
> > (2)    the weight of the evidence against the person;
> >
> > (3)    the history and characteristics of the person, including --
> >
> > > (A)    the person's character, physical and mental condition,
> > > family ties, employment, financial resources, length of residence in
> > > the community, community ties, past conduct, history relating to
> > > drug or alcohol abuse, criminal history, and record concerning
> > > appearance at court proceedings; and
> > >
> > > (B)    whether, at the time of the current offense or arrest, the
> > > person was on probation, on parole, or on other release pending
> > > trial, sentencing, appeal, or completion of sentence for an offense
> > > under Federal, State, or local law; and
> >
> > (4)    the nature and seriousness of the danger to any person or the
> > community that would be posed by the person's release. In considering the
> > conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii)
> > of this section, the judicial officer may upon his own motion, or shall upon
> > the motion of the Government, conduct an inquiry into the source of the

property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

8 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption arises that the defendant is a flight risk and a danger to the community. See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders). 18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46." 18 U.S.C. § 3142(e)(3)(A). The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more." United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993). Accord United States v. Holguin, 971 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.). "'Once the presumption is invoked, the burden of production shifts to the defendant.'" United States v. Holguin, 791 F. Supp. 2d at 1087 (quoting United States v. Stricklin, 932 F.2d 1353, 1354-55(10th Cir. 1991)).

To determine whether the defendant has rebutted the presumption of detention, a court must consider: (i) the charged crime's nature and circumstances; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past

conduct; and (iv) the nature and seriousness of the danger to the community, or to an individual that release would pose.  See 18 U.S.C. § 3142(g).  "Should the defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community."  United States v. Holguin, 791 F. Supp. 2d at 1087 (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")).  Notably, however, even if the defendant meets his or her burden of production under 18 U.S.C. § 3142(f), "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436.

### THE DISTRICT COURT'S STANDARD OF REVIEW

Section 3145(a) of Title 18 provides that a "court having original jurisdiction over the offense" may review a magistrate judge's detention order or release order.  18 U.S.C. § 3145(a)-(b).  "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d at 616 n.1.  "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release."  United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992).  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of Magistrate Judge's order setting bond was de novo).

<u>ANALYSIS</u>

The United States has charged Lee with violations of 21 U.S.C. §§ 841(b)(1)(B)(viii), which carries a maximum imprisonment term of forty years. <u>See</u> Indictment at 1-2. Because the Indictment provides probable cause that Lee "committed a federal drug offense with a maximum prison term of ten years or more," <u>United States v. Silva</u>, 7 F.3d at 1046, a presumption of detention arises, <u>see</u> 18 U.S.C. § 3142(e)(3)(A) (providing that a presumption arises when defendants are charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act"). Although Lee comes forward with some evidence to rebut the presumption that he is a danger to the community and a flight risk, the United States demonstrates by a preponderance of the evidence that the Court cannot impose conditions to mitigate Lee's risk of flight. Accordingly, the Court will affirm the Detention Order.

## I.   THE COURT CAN FASHION CONDITIONS TO SUFFICIENTLY MITIGATE LEE'S DANGER TO THE COMMUNITY.

Because of the charges that Lee faces, he shoulders the burden of producing evidence to show that the Court could impose conditions which would reduce any danger to the community to an acceptable level. Although the defendant bears the burden of production, the burden of persuasion regarding risk-of-flight and dangerousness always remains with the United States. <u>See</u> <u>United States v. Stricklin</u>, 932 F.2d at 1354-55. The Tenth Circuit has stated that the defendant's burden of production "is not heavy." <u>United States v. Stricklin</u>, 932 F.2d at 1355. Congress lists a number of factors that the Court must consider in making the determination whether it can impose conditions to sufficiently mitigate any danger defendant poses. <u>See</u> 18 U.S.C. § 3142(g). They include: (i) the charged crime's nature and circumstances; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics,

including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the seriousness of the danger to the community or to an individual that the defendant's release would pose.  See 18 U.S.C. § 3142(g).

Lee presents several facts to support his contention that he does not pose a danger to the community.  First, he notes that he is charged with "two related non-violent drug offenses." Motion at 3.  See Indictment at 1-2.  He argues that the offense's nature and the drug quantities involved "suggest that Defendant is, at most, a street-level drug dealer."  Motion at 3.  Second, Lee demonstrates that much of his criminal history "consists of drug possession offenses that suggest little to no danger to the community at large."  Motion at 3.  Lee's evidence rebuts the presumption that he will pose a danger to the community.

After considering the § 3142(g) factors, the United States has not shown by clear-and-convincing evidence that the Court cannot fashion conditions to mitigate Lee's danger to the community.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003)(noting that the United States bears the burden of proving dangerousness by clear-and-convincing evidence).  In considering the first § 3142(g) factor -- "the nature and circumstances of the crime charged" -- the Court notes that the crime charged is a non-violent offense without any connection to known gang activity.  It involves no violence or threats of violence.  See Motion at 3.  Furthermore, Lee is not a high-ranking officer in a drug cartel who directs criminal activity.  See Motion at 3.  As Lee notes, detaining him pending trial will do little "to stem the tide of drugs in the community as it could (possibly) if Defendant were a high-level member of a drug trafficking organization."  Motion at 3.

The second § 3142(g) factor -- the weight of the evidence against the defendant -- weighs in favor of detention.  Although Lee argues that the evidence is weak, the United States

characterizes the evidence as "fairly strong."  Tr. at 15:19-20 (Cairns).  The evidence may not be overwhelming, but it is not weak.  As the United States explained at the hearing, "an undercover officer was there for the transaction."  Tr. at 15:20-16:3 (Cairns).  The undercover officer then identified Lee through surveillance.  See Tr. at 15:20-16:3 (Cairns).  The United States concedes that the evidence is not bullet-proof.  See Tr. at 16:3-6 (Cairns).  As Lee observed at the hearing, the undercover officer witnessed the transaction from the rear seat of a vehicle, while Lee sat in the front seat.  See Tr. at 7:20-23 (Anderson).  Moreover, the undercover officer identified Lee "a number of days after" the alleged drug transaction.  Tr. at 7:1-6 (Anderson).  Overall, however, the evidence against Lee is fairly strong.

Under § 3142(g)'s third factor, the Court observes that Lee's family undercuts the idea that he poses a danger to the community.  See United States v. Charley, 2010 WL 4338094, at *6 (determining that the defendant's seven-year employment history and ten-year marriage indicated he would not endanger the community under imposed conditions); United States v. Robertson, 2008 WL 2565015, at *2 (D.N.D. June 24, 2008)(Senechal, J.)(concluding that the defendant was not a danger to the community when he lived in the community his entire life and supported his mother); United States v. Thomas, 2006 WL 140558, at *7 (D. Md. Jan. 13, 2006)(Gauvey, J.)(concluding that the defendant's strong family and community support throughout the proceedings indicated he was not a danger).  Lee's children reside in Albuquerque.  See Tr. at 5:18-23 (Lee).  Lee asserts that he likes to spend his free time with his children, because one of his daughters has a learning disability, and he tries to financially support those children when possible.  See Tr. at 5:18-23 (Lee).

Finally, § 3142(g)'s fourth factor -- the seriousness of the danger to the community or to an individual that the defendant's release would pose -- weighs in favor of detention.  Although

the current offense, along with much of Lee's criminal history "consists of drug possession offenses that suggest little to no danger to the community at large," Motion at 3, Lee has been charged and convicted of numerous assaults, see PSR at 5-10.  Most recently, in December 2015, Lee was charged with aggravated assault with a deadly weapon and knowingly leaving the scene of an accident, in addition to various drug trafficking and distribution offenses, and one count of tampering with evidence.  See PSR at 10.  Lee admitted that he "was involved in a car accident," was alleged to have left the scene, and "possibly alleged to have been in possession of a firearm."  Tr. at 13:15-21 (Anderson).  In 2013, Lee was found guilty of possessing a controlled substance and possessing a weapon or explosive.  See PSR at 10.  That same year, Lee was charged with an assault against a household member.  See PSR at 9.  While the charge was eventually dismissed, Lee conceded at the hearing that the assault occurred in a prior relationship.  See Tr. at 12:13-14 (Anderson).  Further, Lee was convicted of aggravated assault in 2005.  See PSR at 7.  Lee was convicted of various drug possession charges throughout the years.  See Tr. at 11:3-8 (Anderson)(explaining that the aggravated assault in 2005 "was a result of a shooting that that happened" in Memphis).  These crimes all suggest that Lee poses a danger to the community.

Considering all of the factors, however, the Court could likely fashion conditions that mitigate the danger Lee poses.  Congress has directed courts to confine individuals pending trial only after a court determines "that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community."  18 U.S.C. § 3142(e).  The Court believes that it could fashion conditions that would mitigate any danger to the community. While the Court does not believe that Lee can remain at home, it concludes that it can put him in a halfway house under lockdown conditions and electronic monitoring.  It does not think he

should be out in the community, given his past drug trafficking activities and the evidence in this case.  Hence, he should not be trying to work, given that he has not been giving much money to his family anyway.  The Court would be comfortable releasing Lee given his criminal history and violations on release, provided that he remain in lock down status at La Pasada. Nevertheless, because the Court cannot impose conditions that would mitigate Lee's flight risk to acceptable levels, it will affirm the Detention Order.

II.     **THE UNITED STATES HAS SHOWN BY A PREPONDERANCE OF THE EVIDENCE THAT LEE IS A FLIGHT RISK, AND THE COURT CANNOT IMPOSE CONDITIONS TO MITIGATE THAT RISK.**

Although Lee presents some evidence to rebut the presumption that he is a flight risk, <u>see</u> Motion at 2, the United States meets its burden of proving, by a preponderance of the evidence, that Lee is a flight risk.  Furthermore, the Court cannot impose conditions to mitigate that risk and ensure Lee's appearance at trial.

Congress determined that offenders who commit dangerous crimes, which carry higher sentences, are more likely to flee before their trials.  <u>See</u> Senate Report at 19-20.  Specifically, Congress included drug-trafficking offenses in the list of offenses giving rise to the presumption, because "individuals involved in drug trafficking often have foreign contacts and the ability to leave the country, and incentives to remain active in the drug trade."  <u>United States v. Disher</u>, 650 F. Supp. 2d 1131, 1136 (D.N.M. 2009)(Browning, J.).  Here, Lee submits evidence that he lacks ties to a drug-trafficking organization, and therefore, lacks any resources that could help him flee.  <u>See</u> Motion at 2.  While Lee argues that he is not tied to a drug-trafficking organization, the PSR states that "the Western District of Tennessee revealed the defendant [wa]s associated [with] the Gangster Disciples street gang" while in Tennessee.  PSR at 2.  Although this alleged drug connection may not pose a danger to the community in Albuquerque, it may provide him with resources to flee to Memphis.  Furthermore, Lee is indicted on drug conspiracy

charges, suggesting that he has links to other criminals who may be able to help him flee. Consequently, the nature and characteristics of the offense suggest that Lee poses a flight risk.

As the Court explained above, the second § 3142(g) factor -- the weight of the evidence against the defendant -- weighs in favor of detention.  Third, Lee's personal characteristics demonstrate that he presents a flight risk.  He has strong ties to another city.  Lee "resided in Memphis, Tennessee from the early 1980s until sometime after 2000" -- nearly twenty years. Pretrial Services Report at 1, disclosed July 12, 2016 ("Bail Report").  Lee's half-brother, Mark Bradford, and mother still reside in Memphis.  See Bail Report at 1-2.  Lee lacks strong ties to Albuquerque.  He "is currently single" and does not have primary custody of any of his children. Bail Report at 2.  Finally, other than Lee's daughters, he lacks significant ties to the community. He works as a "self-employed car detailer" -- a job that he could perform anywhere.  Bail Report at 2.  The PSR notes that Lee has an unstable living situation.  See PSR at 3.

Fourth, and most important, Lee has a history of failing to appear to court proceedings. See Bail Report at 3.  In 1998, Lee failed to appear for booking and processing, leading to a bench warrant for his arrest.  See PSR at 5.  In 2007, he was extradited to Tennessee.  See Bail Report at 8.  In 2008, he was charged with being a fugitive from justice and held for extradition, although the charge was later dismissed.  See Bail Report at 9.  In sum, while Lee lacks financial resources, his numerous Memphis ties and his history of failing to appear demonstrate that he poses a flight risk.  Given this history, the Court does not believe it can create conditions that would adequately mitigate this flight risk.  As the United States pointed out at the hearing, Lee did not show up for proceedings in Tennessee and he had to be extradited.  The Court is concerned that he will do that here -- flee, have to be found, and have to be extradited.

Moreover, in light of Lee's history of assaults, the Court is concerned that Lee might endanger others if he flees.  Consequently, the Court denies Lee's Motion.

**IT IS ORDERED** that: (i) the Defendant's Opposed Motion for Review of Order of Detention Pending Trial, filed July 24, 2016 (Doc. 35), is denied; and (ii) the Magistrate Judge's Detention Order Pending Trial, filed July 12, 2016 (Doc. 23), is affirmed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Norman Cairns
David M. Walsh
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

 *Attorneys for Plaintiff United States of America*

John C. Anderson
Holland & Hart LLP
Santa Fe, New Mexico

 *Attorneys for the Defendant*